IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| EMILY SOCOLOV,<br><br>    Plaintiff,<br><br>        v.<br><br>U.S. DEPARTMENT OF JUSTICE, including Its components OFFICE OF LEGAL COUNSEL and OFFICE OF INFORMATION POLICY, and FEDERAL BUREAU OF INVESTIGATION,<br><br>    Defendants. | Civil Action No. 1:19-cv-00419-DAE |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION
TO CHALLENGE INVOCATION OF FOIA EXEMPTIONS**

In this Freedom of Information Act ("FOIA") case, Plaintiff Dr. Emily Socolov filed a Motion to Resolve Issues as to the government's "Improper Invocation of FOIA Exemptions in its Production of Documents." Dkt. 63 (the "Motion"). Under FOIA, federal agencies must make government records available to the public, subject to nine exemptions. 5 U.S.C. § 552(b). Here, the government released over 33,000 pages of records in response to Dr. Socolov's FOIA requests, applying limited redactions pursuant to FOIA's statutory exemptions. Dr. Socolov now seeks a ruling that some of Defendants' FOIA exemptions were "improperly invoked." Dkt. 63-34.[1] For the reasons stated below and in the attached declarations, the government's redactions were statutorily proper, and Dr. Socolov's Motion should be denied.

---

[1] Dr. Socolov claims her motion is non-dispositive, but it is well-settled that rulings on the propriety of claimed FOIA exemptions are dispositive in a FOIA case and are evaluated at summary judgment through the use of *Vaughn* indices and agency declarations. Accordingly, the government construes Dr. Socolov's Motion as a dispositive motion and responds accordingly, supplying the Court with indices and agency declarations to support the claimed FOIA exemptions.

## BACKGROUND

***Coplon Espionage Convictions.*** Judith Coplon, a former Department of Justice employee, was twice convicted on charges of espionage and conspiracy in 1949 after two trials–one in New York federal court and one in D.C. federal court. On appeal, the Second Circuit determined that "[her] guilt [wa]s plain," but that her New York conviction should be overturned due to the government's errors in gathering evidence. *United States v. Coplon*, 185 F.2d 629, 640 (2d Cir. 1950). In reviewing her D.C. conviction, the D.C. Circuit likewise found that "the evidence was sufficient to sustain the verdict" but ordered a new trial due to allegations of improper wiretapping. *Coplon v. United States*, 191 F.2d 749, 760 (D.C. Cir. 1951).

***FOIA Requests.*** Dr. Socolov is the daughter of Ms. Coplon and is conducting research for a forthcoming book about her mother. Dkt. 1. As part of that research, Dr. Socolov began submitting FOIA requests for records on Ms. Coplon in June 2012. Over the next several years, Dr. Socolov submitted several more related requests, and in response, the FBI made numerous releases. Prior to this lawsuit, the FBI had released approximately 10,751 pages of records in response to Dr. Socolov's various FOIA requests. *See* Dkt. Nos. 1, 42.

***Lawsuit.*** Plaintiff filed the instant Complaint on April 15, 2019. Dkt. 1. With the goal of resolving the case without judicial intervention, the government began to re-process and produce responsive documents in August 2019, shortly after filing its Answer and prior to entry of a scheduling order. Beginning on August 30, 2019 and continuing through April 12, 2023, the FBI made thirty-eight interim productions in response to Plaintiff's request. Ex. 1, Seidel Decl. ¶6 (attaching FOIA production letters).

The government processed records in this case at a pace of 1,500 pages per month—triple the speed of the FBI's standard policy of processing documents at a rate of 500 pages per month.

Dkt. 44 at 2-4; *see also* Dkt. Nos. 50-59.  The government met its final production deadline set by the Scheduling Order, producing 33,129 pages of records.  *Id.*  The records produced were Bates numbered consecutively as FBI(19-cv-419)-1 through FBI(19-cv-419)-33129.  Ex. 1, Seidel Decl. ¶8.  Throughout the production period, the government has worked proactively to resolve procedural and substantive issues, soliciting Dr. Socolov's feedback and objections to production issues and working to address them when possible.  *See* Dkt. Nos. 50-59.

Per the Scheduling Order, the parties also engaged in a more formal meet-and-confer process whereby Dr. Socolov provided a written list of alleged production deficiencies and redaction challenges.  The government, in turn, provided written responses and explanations for its redactions, as well as supplemental productions.  Dkt. 60 at 2.  The government also voluntarily provided two sample *Vaughn* indices and a declaration to address Dr. Socolov's questions concerning the government's searches for and processing of responsive documents.  *Id.*  Despite these efforts, disputes remain about some of the government's redactions.

## LEGAL STANDARD

**I.     Plaintiff's Motion is a Motion for Summary Judgment under a Different Name.**

Dr. Socolov filed what she styled an "Opposed Motion Pursuant to Scheduling Order Paragraph 5(b) to Resolve Issues as to Defendants' Improper Invocation of FOIA Exemptions in its Production of Documents."  Dkt. 63.  Plaintiff insists her Motion is non-dispositive.  *Id.* at 2-4.  Notably absent from the Motion is any statement defining the legal standard the Court should apply in reviewing her challenges to the government's claimed exemptions.  Indeed, there is no standard for a "non-dispositive" motion to resolve the propriety of FOIA exemptions.  Lacking precedent for such a motion, Plaintiff's counsel emailed Court staff prior to filing in order to seek advice on

"what mechanism to use" for this Motion. Ex. 2. The Court correctly declined to provide the requested legal advice.

In the Motion, Plaintiff seeks an order from the Court holding that Defendants' applications of FOIA Exemptions 7(E), 7(D), 6, 7(C) and 1 were "improper[]". Dkt. 63-24. It is well-settled that rulings on the propriety of claimed FOIA exemptions are dispositive in a FOIA case and are evaluated at summary judgment. *See Williams v. Comm'r of Internal Revenue*, 449 F. App'x 327, 329 (5th Cir. 2011) (affirming summary judgment for agency on propriety of agency's invocation of FOIA Exemption 7(C)); *Thomas v. U.S. Dep't of Just.*, 260 F. App'x 677, 679 (5th Cir. 2007) (affirming summary judgment for agency on propriety of agency's invocation of FOIA Exemption 7(C)); *Abrams v. U.S. Dep't of Treasury*, 243 F. App'x 4, 6 (5th Cir. 2007) (affirming summary judgment for agency on propriety of agency's invocation of FOIA Exemption 8); *Flightsafety Servs. Corp. v. Dep't of Lab.*, 326 F.3d 607, 613 (5th Cir. 2003) (affirming summary judgment for agency on propriety of agency's invocation of FOIA Exemption 4). Plaintiff's characterization of this Motion as non-dispositive is a misnomer, presumably made in a bid to reserve the right to file successive piecemeal motions for summary judgment.[2] Dkt. 63, n.1. Plaintiff's Motion is a motion for summary judgment under a different name and should be evaluated as such.[3]

## II.     The FOIA Summary Judgment Standard Applies Here.

Absent any articulated legal standard in Plaintiff's Motion, this Court should apply the FOIA summary judgment standard. In general, summary judgment is appropriate only if there is

---

[2] The government, in turn, reserves the right to object to Plaintiff's forthcoming successive motions for summary judgment, in which Plaintiff will raise arguments and issues that could have and should have been raised in one single motion. *See Brown v. City of Syracuse*, 673 F.3d 141, 147 n.2 (2d Cir. 2012) ("successive motions for summary judgment may be procedurally improper if the arguments in the second motion could have been raised in the first motion").

[3] The government will file its own Cross-Motion of Summary Judgment at a later date pursuant to the dispositive motion deadline in the Scheduling Order, as amended.

no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "In the FOIA context, however, the traditional standard is modified because 'the threshold question in any FOIA suit is whether the requester can even see the documents the character of which determines whether they can be released.'" *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010). As stated, FOIA requires federal agencies to disclose documents within their control upon request unless the documents fall within one of the nine enumerated exemptions. *See* 5 U.S.C. § 552(b)(1)–(9). The government bears the burden to prove that documents fall within an exemption. *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 141 n.3 (1989); *Batton*, 598 F.3d at 175; *see also* 5 U.S.C. § 552(a)(4)(B) ("[T]he burden is on the agency to sustain its action.").

"Typically it does so by [1] affidavit," *Am. Civ. Liberties Union v. U.S. Dep't of Defense,* 628 F.3d 612, 619 (D.C. Cir. 2011), and by [2] submitting "*Vaughn* indices describing the withheld documents and explaining why the withheld information fell under the claimed exemptions." *Larson v. Dep't of State,* 565 F.3d 857, 862 (D.C. Cir. 2009). A *Vaughn* index is a table, common in FOIA cases, describing the withheld documents and explaining why the withheld information fell under the claimed exemptions. *Batton*, 598 F.3d at 174. An agency's affidavits "are generally accorded the 'presumption of legitimacy' unless there is evidence that the agency handled the FOIA request in bad faith." *Id.* at 179.

Although the statute is designed to promote disclosure, "FOIA expressly recognizes that important interests are served by its exemptions, and those exemptions are as much a part of FOIA's purposes and policies as the statute's disclosure requirement." *Jobe v. Nat'l Transp. Safety Bd.*, 1 F.4th 396, 402 (5th Cir. 2021) (citing *Food Marketing Inst. v. Argus Leader Media*, ––– U.S. ––––, 139 S. Ct. 2356, 2366, 204 L.Ed.2d 742 (2019) (cleaned up)); *see also FBI v. Abramson*, 456 U.S. 615, 630–31 (1982) ("While Congress established that the basic policy of [FOIA] is in

favor of disclosure, it recognized the important interests served by the exemptions."). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible'" *Wolf v. C.I.A.*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (citations omitted).

## ARGUMENT

Dr. Socolov's Motion does not challenge the adequacy of the government's search. Rather, the Motion focuses on four categories of FOIA exemptions:

> (1) Exemption 7(E) as to Plaintiff's Exhibits H, I, J, K, L, M, N, O, P, and Q
> (2) Exemption 7(D) as to Plaintiff's Exhibits T, U, V, and W
> (3) Exemptions 6 and 7(C) as to Plaintiff's Exhibits X, Y, Z, and AA; and
> (4) Exemption 1 as to Plaintiff's Exhibits AB, AC, and AD.

*See* Dkt. 63-34 (Plaintiff's Proposed Order). Because the government can carry its burden with indices and agency declarations as to each of the claimed exemptions, Dr. Socolov's Motion should be denied.[4]

### I.   Exemption 7(E): Investigative Techniques and Procedures

Dr. Socolov seeks a ruling that the government's invocation of FOIA Exemption 7(E) was improper as to Plaintiff's Exhibits H, I, J, K, L, M, N, O, P, and Q. Dkt. 63-34. FOIA Exemption 7(E) exempts from disclosure documents that "would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 522(b)(7)(E). To show that it is justified in withholding the information under Exemption 7(E), an agency must "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. F.B.I.*,

---

[4] Plaintiff invites the Court to err by asking it to rule on the propriety of FOIA exemptions <u>without</u> reference to declarations or *Vaughn* indices. *See* Motion, Dkt. 63 at 5 ("She does not seek an order requiring Defendants to lift thousands of its redactions under every Exemption claimed, produce hundreds of withheld pages, or provide additional information or declarations as to the nature or basis therefor. She is not seeking a Vaughn Index nor challenging the two preliminary indices provided by Defendants. Rather, she seeks this Court's findings as to the propriety of several specific FOIA exemptions asserted by Defendants []."). The Court should decline.

646 F.3d 37, 42 (D.C. Cir. 2011) (quoting *Mayer Brown LLP v. I.R.S.*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)); *see also Bradley v. Internal Revenue Serv.*, No. 5:17-CV-737-DAE, 2019 WL 4980459, at *7 (W.D. Tex. Aug. 5, 2019).

Here, the government asserted Exemption (7)(E) to protect information the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecution where disclosure could reasonably be expected to risk circumvention of the law. Ex. 1, Seidel Decl. ¶26. Specifically, in Plaintiff's Exhibits H-Q, the FBI applied Exemption (7)(E) to non-public investigative techniques and procedures utilized by the FBI to pursue its law enforcement mission. *Id.* ¶27. Though Plaintiff asserts that the techniques are known to the public, redactions were also applied to *non-public details* about techniques and procedures that are otherwise known to the public. *Id.* This information qualifies for protection under FOIA Exemption 7(E) as they are non-public law enforcement techniques, the release of which would enable criminals to circumvent the law. *Id.* ¶28. There is no evidentiary basis for Plaintiff's claim that redactions were applied due to a concern with the FBI's alleged "embarrassment."

Moreover, for some of these exhibits, the government asserted Exemption 7(E) to protect "sensitive investigative techniques used to conduct national security investigations, in conjunction with FOIA Exemption 3 [50 U.S.C. § 3024(i)(1)]." *Id.* ¶28.[5] Dr. Socolov does not challenge the government's invocation of FOIA Exemption 3. These techniques qualify for protection pursuant to Exemption 3 in addition to Exemption 7(E) as they are intelligence gathering sources and methods used in a national security context.

---

[5] Exemption 3 exempts matters "specifically exempted from disclosure by statute" under certain circumstances. 5 U.S.C. § 552(b)(3). The relevant statute exempting disclosure is 50 U.S.C. § 3024(i)(1), which requires the Director of National Intelligence to protect intelligence sources and methods from unauthorized disclosure under certain statutorily enumerated circumstances. *Id.*

The redacted investigative "techniques are highly sensitive and releasing additional information about them or discussing them in greater detail here would reveal their very nature, including when and how they are utilized by the FBI in criminal and national security investigations." *Id*. This would enable criminals and foreign adversaries targeted by these techniques to predict and circumvent their use by the FBI. *Id*. As such, the government asserted Exemption 7(E), in some instances in conjunction with Exemption 3, to protect these sensitive investigative techniques.

Here, as in *Bradley*, the government has met its burden because it "has logically explained how disclosure of the information could create a risk of circumvention of the law." *Bradley*, 2019 WL 4980459, at *7; *see also Blackwell*, 646 F.3d at 42 (declaration stating that disclosure of FBI reports "could enable criminals to employ countermeasures to avoid detection, thus jeopardizing the FBI's investigatory missions" was sufficient to invoke 7(E)). For these reasons, and as summarized in the chart below, the Court should find that the government properly applied FOIA Exemption 7(E) and deny Plaintiff's Motion as to Plaintiff's Exhibits H-Q.

| **EXEMPTION 7(E) REDACTIONS** | | | | |
|---|---|---|---|---|
| **Plaintiff's Ex. No.** | **Dkt. No.** | **Bates Page** | **Description** | **Bases for Redaction** |
| **H** | 63-9 | 28709 | Letter dated December 15, 1950 | FBI's non-public investigative techniques and procedures |
| **I** | 63-10 | 24639 | Memo dated March 5, 1949 | FBI's non-public investigative techniques and procedures, in conjunction with Exemption 3 |
| **J** | 63-11 | 5006 | Memo dated December 11, 1950 | FBI's non-public investigative techniques and procedures, in conjunction with Exemption 3 |
| **K** | 63-12 | 15892 | Memo dated January 4, 1949 | FBI's non-public investigative techniques and procedures |
| **L** | 63-13 | 30183 | Memo dated December 29, 1948 | FBI's non-public investigative techniques and procedures |

| | | | | |
|---|---|---|---|---|
| M | 63-14 | 30424 | Memo dated January 11, 1950 | FBI's non-public investigative techniques and procedures |
| N | 63-15 | 13884 | Teletype dated January 17, 1950 | FBI's non-public investigative techniques and procedures |
| O | 63-16 | 21217 | Teletype dated January 17, 1950 | FBI's non-public investigative techniques and procedures |
| P | 63-17 | 28446 | Teletype dated January 17, 1950 | FBI's non-public investigative techniques and procedures |
| Q | 63-18 | 28470 | Memo dated January 23, 1950 | FBI's non-public investigative techniques and procedures |

II.     **Exemption 7(D): Confidential Source Information**

Dr. Socolov next seeks a ruling that the government's invocation of FOIA Exemption 7(D) was improper as to Plaintiff's Exhibits T, U, V, and W. Dkt. 63-34. Exemption 7(D) exempts records or information compiled for law enforcement purposes when disclosure:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). "Under 7(D), the government has clear statutory authority to withhold both the source and the information with respect to criminal investigations . . . ." *Cooper Cameron Corp. v. U.S. Dep't of Lab.*, 280 F.3d 539, 550 (5th Cir. 2002).

Numerous confidential sources report to the FBI on a regular basis; they provide information under express assurances of confidentiality and are "informants" within the common meaning of the term. Ex. 1, Seidel Decl. ¶20. Others are interviewed and/or provide information under implied assurances of confidentiality (i.e., under circumstances from which assurances of confidentiality may be inferred). *Id.* In either situation, these sources are considered confidential because they furnish information only with the understanding that their identities and the information they provided will not be divulged outside the FBI. *Id.* Information provided by these

9

sources is singular in nature, and if released, could reveal their identities. *Id.* Sources providing information to the FBI should be secure in the knowledge that their assistance and their identities will be held in confidence.

Within the records at issue, the FBI withheld (1) confidential human source symbol numbers and (2) the identity of a foreign government agency under an express assurance of confidentiality. The FBI did not, as Plaintiff alleges in her Motion, characterize illegal wiretaps as confidential human sources. Ex. 1, Seidel Decl. ¶20, n.7.

### A. Confidential Source Symbol Numbers

As to Plaintiff's Exhibits T, U, and W, the government protected the permanent source symbol numbers given to FBI confidential human sources ("CHSs"). *Id.* ¶22. In this case, the FBI did not refer to the confidential sources by their true names. *Id.* Instead, these sources were referred to only by their individually assigned permanent source symbol numbers. *Id.* The FBI obtained information from these confidential sources relevant to the investigations discussed within the records at issue. *Id.*

If the FBI disclosed the confidential source symbol numbers of these informants, their identities could be ascertained by persons knowledgeable of the FBI's investigations and the events and subjects involved because these singular numbers are assigned to specific individuals. *Id.* ¶23. Once sources' identities were discerned, the informants, as well as their families, could be subjected to embarrassment, humiliation, and/or physical or mental harm. *Id.* Moreover, the disclosure of a CHS's identity could portray the FBI as unwilling to protect its CHSs from exposure and/or negligent in honoring its promises to keep CHSs' identities confidential. *Id.* This, in turn, could dissuade current and future potential CHSs with access to critical intelligence from cooperating with FBI investigators. *Id.* Courts routinely protect confidential source symbol

numbers for these reasons. *Pickering v. U.S. Dep't of Just.*, No. 19-CV-001F, 2021 WL 5810396, at *16 (W.D.N.Y. Dec. 7, 2021); *Webster v. U.S. Dep't of Just.*, No. CV 02-603 (RC), 2020 WL 1536303, at *7 (D.D.C. Mar. 31, 2020); *Canning v. U.S. Dep't of Just.*, No. CV 11-1295(GK), 2017 WL 2438765, at *10 (D.D.C. June 5, 2017). Here, as in *Pickering, Webster*, and *Canning,* the government properly protected confidential source symbol numbers under Exemption 7(D).

### B. Identity of, and Information Provided by, a Foreign Law Enforcement Agency Under an Express Assurance of Confidentiality

As to Plaintiff's Exhibit V, the government applied redactions to protect information provided to the FBI by a foreign government agency under an express assurance of confidentiality. Ex. 1, Seidel Decl. ¶24. Foreign government agencies frequently work with the FBI during criminal, counterterrorism and counterintelligence investigations. *Id.* Disclosure could reveal the information the foreign government agencies provided to the FBI in confidence as well as alienate the agencies position within their country for sharing such information with the United States. *Id.* Publicity, adverse or otherwise, concerning information provided to the FBI by foreign government agencies could be detrimental to the necessary cooperation of the foreign government agencies with the FBI. *Id.* The degradation of perceived trust in the FBI by disclosing the information would seriously impair the FBI's effectiveness in assisting with or participating in future investigations with the foreign government agencies. *Id.* This is a recognized basis for invoking Exemption 7(D). *Property of the People, Inc. v. Dep't of Justice*, 539 F. Supp. 3d 16, 27 (D.D.C. 2021) (approving reliance on Exemption 7(D) where foreign government provided information during cooperative investigation under an express assurance of confidentiality); *see also Pickering*, 2021 WL 5810396, at *16.

For these reasons, and as summarized in the chart below, the government properly redacted Plaintiff's Exhibits T, U, V, and W, and the Motion should be denied as to FOIA Exemption 7(D).

| **EXEMPTION 7(D) REDACTIONS** | | | | |
|---|---|---|---|---|
| Plaintiff's Ex. No. | Dkt. No. | Bates Page | Description | Bases for Redaction |
| T | 63-21 | 3218 | Teletype dated July 13, 1949 | Confidential Source Symbol Numbers given to FBI confidential human sources |
| U | 63-22 | 66 | Teletype dated January 21, 1949 | Confidential Source Symbol Numbers given to FBI confidential human sources |
| V | 63-23 | 4190 | Transcript of recorded conversations dated February 23, 1949 | Identity of, and Information Provided by, a Foreign Law Enforcement Agency Under an Express Assurance of Confidentiality |
| W | 63-24 | 13092 | Transcript of recorded conversations dated June 1, 1949 | Confidential Source Symbol Numbers given to FBI confidential human sources |

### III.  Exemption 6 and 7(C): Unwarranted Invasion of Personal Privacy

Dr. Socolov next seeks a ruling that the government's invocations of FOIA Exemptions 6 and 7(C) were improper as to Plaintiff's Exhibits X, Y, Z, and AA.  Dkt. 63-34.  Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  All information that applies to a particular person falls within the scope of Exemption 6.  *Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168, 175 (2d Cir. 2014) (citing *U. S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599-602 (1982)).  Exemption 7(C) similarly exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

Throughout the FBI's document production, in each instance wherein information was withheld pursuant to Exemptions 6 and 7(C), the FBI determined that the individuals' privacy interests outweighed any public interest in disclosure.  Ex. 1, Seidel Decl. ¶14.  In her Motion, Dr. Socolov broadly accuses the FBI of failing to perform internal searches to determine whether

individuals identified in the documents were deceased or 100 years old. Dkt. 63 at 12. This is not accurate. To the contrary, Defendants voluntarily undertook additional steps to search external databases to determine the age and life/death status of several individuals and re-processed and disclosed those names of individuals the FBI determined to be deceased through that additional search process. These searches are well-documented in correspondence between counsel. These additional disclosures were provided—without 6 and 7(C) redactions—in March and April 2023 to Plaintiff before she filed this Motion. *See* Ex. 1A, Production Letters at 147-154.

In any event, the only four challenged exhibits named in Plaintiff's Motion—Plaintiff's Exhibits X, Y, Z, and AA—relate to Exemption 6 and 7(C) redactions applied by **other** government agencies who are not party to this lawsuit (and over whom Defendants have no authority to compel disclosure). Put another way, none of Exemption 6 and 7(C) redactions at issue in the Motion were not applied by any of the Defendants. Rather, Defendants consulted with other government agencies, as contemplated by statute. *See* 5 U.S.C. § 552(a)(6)(B)(iii)(III) (permitting consultation "with another agency having a substantial interest in the determination of the request"). And those other government agencies invoked the now-challenged exemptions. The exemptions claimed by those non-party government agencies are supported by the attached declarations from those agencies.

First, Dr. Socolov's challenges to redactions in Plaintiff's Exhibit X are now moot because the challenged page was released by the other government agency who initially withheld it. Ex. 1C, Production Letter (release by United States Army Intelligence and Security Command).

Second, as to Plaintiff's Exhibit Y, it was non-party U.S. Postal Inspection Service—not the named Defendants—who invoked FOIA Exemptions 6 and 7(C). Ex. 1, Seidel Decl. ¶32; Ex. 1G, Brantley Decl. USPIS justified its invocation of the exemptions in its declaration. *Id.*

Third and similarly, in Plaintiff's Exhibit Z, it was non-party U.S. Immigration and Customs Enforcement—not the named Defendants—who invoked FOIA Exemptions 6 and 7(C). Ex. 1, Seidel Decl. ¶30; *see also* Ex. 1E, Pineiro Decl.  ICE justified its invocation of the exemptions in its declaration. *Id.*

As to the fourth and final challenge, Plaintiff's Exhibit AA, although the Exemption 6/7(C) redaction has now been lifted by non-party USCIS, the information remains protected under Exemption 3, the invocation of which Plaintiff does not challenge.  Ex. 1, Seidel Decl. ¶32.

| **EXEMPTION 6 and 7(C) REDACTIONS** |||||
|---|---|---|---|---|
| **Plaintiff's Ex. No.** | **Dkt. No.** | **Bates Page** | **Description** | **Bases for Redaction** |
| X | 63-25 | 2577 | Army document dated May 6, 1949 | No Redactions; Released by United States Army Intelligence and Security Command |
| Y | 63-26 | 24620 | United States Postal Service document dated February 25, 1949 | U.S. Postal Inspection Service redacted pursuant to FOIA Exemptions 6 and 7(C) |
| Z | 63-27 | 29992 | Immigration and Naturalization Service document dated January 22, 1954 | U.S. Immigration and Customs Enforcement requested that information be protected pursuant to FOIA Exemptions 6 and 7(C) |
| AA | 63-28 | 27584 | Letter dated June 1, 1949 | USCIS has withdrawn the assertion of Exemption 6 on Bates page 27584.  The information remains exempt pursuant to unchallenged Exemption 3 |

As summarized in the chart above, Dr. Socolov's challenges to the redactions in Plaintiff's Exhibits X, Y, Z, and AA are either mooted or refuted by the non-party declarations, and her Motion should be denied as to FOIA Exemptions 6 and 7(C).

IV.    **Exemption 1: Executive Order Protections**

Finally, Dr. Socolov seeks a ruling that the government's invocation of FOIA Exemption 1 was improper as to Plaintiff's Exhibits AB, AC, and AD.  Dkt. 63-34.  FOIA Exemption 1 excludes from disclosure matters that are "specifically authorized under criteria established by an

14

Executive order to be kept secret in the interest of national defense or foreign policy" and "are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1); *Schaerr v. United States Dep't of Just.*, 69 F.4th 924, 927 (D.C. Cir. 2023).

The challenged redactions in Plaintiff's Exhibits AB and AD were applied by a non-party agency via consultation. Here, the National Security Agency determined that the information was exempt from disclosure under FOIA Exemptions 1, 3, and 6. Ex. 1, Seidel Decl. ¶32; *see also* Ex. 1F, Kiyosaki Decl. ¶5. The information protected pursuant to Exemptions 1 and 3 were properly classified in accordance with Executive Order 13526 and protected from release by 18 U.S.C. § 798 and 50 U.S.C. § 3024. Ex. 1F, Kiyosaki Decl. As described by the NSA, despite the age of the case, "some information relating to cryptanalytic techniques remains classified and statutorily protected because its release would be harmful to national security." *Id.* ¶13.

Plaintiff's Exhibit AC was initially redacted by non-party Department of State but was later released in full.

|  | **EXEMPTION 1 REDACTIONS** |
|---|---|---|---|---|
| **Plaintiff's Ex. No.** | **Dkt. No.** | **Bates Page** | **Description** | **Bases for Redaction** |
| **AB** | 63-29 | 30179 | Letter dated February 9, 1949 | National Security Agency invoked Exemptions 1, 3, and 6 for national security reasons |
| **AC** | 63-30 | 1241 | Department of State document March 11, 1949 | No Redactions; Released by Department of State |
| **AD** | 63-31 | 30246 | Letter dated October 25, 1961 | National Security Agency invoked Exemptions 1, 3, and 6 |

In sum, Dr. Socolov's Exemption 1 challenges to Plaintiff's Exhibits AB and AD are overcome by NSA's declaration. Plaintiff does not challenge the NSA's Exemption 3 and 6 redactions in these pages. Even if NSA's invocation of Exemption 1 was improper, the information would still be protectable under the other unchallenged exemptions. Plaintiff's

15

challenge to the redaction in Plaintiff's Exhibit AC is moot. Thus, her Motion should be denied as to FOIA Exemption 1.

## CONCLUSION

Defendants have presented declarations, *Vaughn* indices, and legal authority sufficient to logically and plausibly support their invocation of the challenged exemptions and satisfy their burden. For the reasons stated above and attached, Defendants respectfully request that the Court deny Plaintiff's Motion (Dkt. 63) and, instead, enter Defendants' proposed order (Dkt. 66-11).

Dated: July 5, 2023                                  Respectfully submitted,

                                                          **Jaime Esparza**
                                                          United States Attorney

                                  By:    */s/ Liane Noble*
                                                   **Liane Noble**
                                                   Assistant United States Attorney
                                                   State Bar No. 24079059
                                                   U.S. Attorney's Office
                                                   903 San Jacinto Blvd., Suite 334
                                                   Austin, Texas 78701
                                                   (512) 370-1252 (phone)
                                                   (512) 916-5854 (fax)
                                                   Liane.noble@usdoj.gov

                                                   ***Attorneys for Defendants***