IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

EMILY SOCOLOV,

      Plaintiff,

              v.

U.S. DEPARTMENT OF JUSTICE, including
Its components OFFICE OF LEGAL
COUNSEL and OFFICE OF INFORMATION
POLICY, and FEDERAL BUREAU OF
INVESTIGATION,

      Defendants.

Civil Action No. 1:19-cv-00419-DAE

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In this Freedom of Information Act ("FOIA") case, Defendants released over 33,000 pages of records in response to Dr. Socolov's FOIA requests—processing records at an accelerated pace and applying only limited redactions pursuant to FOIA's statutory exemptions. 5 U.S.C. § 552(b). Defendants have satisfied their statutory obligations and now seek summary judgment.

## BACKGROUND

***Coplon Espionage Convictions***. Judith Coplon, a former Department of Justice employee, was twice convicted on charges of espionage and conspiracy in 1949 after two trials–one in New York federal court and one in D.C. federal court. On appeal, the Second Circuit determined that "[her] guilt [wa]s plain," but that her New York conviction should be overturned due to the government's errors in gathering evidence. *United States v. Coplon*, 185 F.2d 629, 640 (2d Cir. 1950). In reviewing her D.C. conviction, the D.C. Circuit likewise found that "the evidence was

sufficient to sustain the verdict" but ordered a new trial due to allegations of improper wiretapping. *Coplon v. United States*, 191 F.2d 749, 760 (D.C. Cir. 1951).

**FOIA Requests.** Dr. Socolov is the daughter of Ms. Coplon and is conducting research for a book about her mother. Dkt. 1. As part of that research, Dr. Socolov began submitting FOIA requests in June 2012 for records on Ms. Coplon. Over the next several years, Dr. Socolov submitted several more related requests, and in response, the FBI made numerous releases. Prior to this lawsuit, the FBI had released approximately 10,751 pages of records in response to Dr. Socolov's various FOIA requests. *See* Ex. 1, Third Seidel Decl. ¶4 (Attaching Ex. 1A-1D).

**Lawsuit.** Plaintiff filed the instant Complaint on April 15, 2019. Dkt. 1. With the goal of resolving the case without judicial intervention, the government began to re-process and produce responsive documents in August 2019, shortly after filing its Answer and prior to entry of a scheduling order. Beginning on August 30, 2019, and continuing through April 12, 2023, the FBI made thirty-eight interim productions in response to Plaintiff's request. Dkt. 66-2, Second Seidel Decl. ¶6 (attaching FOIA production letters).

The government processed records in this case at a pace of 1,500 pages per month—triple the speed of the FBI's standard policy of processing documents at a rate of 500 pages per month. Dkt. 44 at 2-4; *see also* Dkt. Nos. 50-59. The government met its final production deadline set by the Scheduling Order, producing 33,129 pages of records. *Id.* The records produced were Bates numbered consecutively as FBI(19-cv-419)-1 through FBI(19-cv-419)-33129. Dkt. 66-2, Second Seidel Decl. ¶8. Throughout the production period, the government has worked proactively to resolve procedural and substantive issues, soliciting Dr. Socolov's feedback and objections to production issues and working to address them when possible. *See* Dkt. Nos. 50-59.

Per the Scheduling Order, the parties also engaged in a formal meet-and-confer process whereby Dr. Socolov provided a written list of alleged production deficiencies and redaction challenges. The government, in turn, provided written responses and explanations for its redactions, as well as supplemental productions. Dkt. 60 at 2. The government also voluntarily provided two sample *Vaughn* indices and a declaration to address Dr. Socolov's questions concerning the government's searches for and processing of responsive documents. *Id.*

***Previous Ruling on Defendants' FOIA Redactions.*** One year ago, in May 2023, Dr. Socolov filed what she styled an "Opposed Motion Pursuant to Scheduling Order Paragraph 5(b) to Resolve Issues as to Defendants' Improper Invocation of FOIA Exemptions in its Production of Documents." Dkt. 63. In the Motion, Plaintiff sought an order holding that Defendants' applications of FOIA Exemptions 7(E), 7(D), 6, 7(C) and 1 were "improper[]". Dkt. 63-24. Defendants responded, attaching a declaration and *Vaughn* Index. Dkt. 66. The Court denied Plaintiff's Motion, finding Defendants had properly applied the challenged Exemptions. Dkt. 71.

***Supplemental Production.*** After that ruling, Defendants continued working to narrow the issues to be decided by the Court. In addition to engaging in continued negotiations with Plaintiff (Dkt. 78), by letter dated April 29, 2024, the FBI and other government agencies made an additional release of records to Plaintiff, advising that 111 pages of records were reviewed, and 101 pages of records were being released in full or part, with certain information exempted pursuant to FOIA Exemptions 3, 5, 6, 7(C), 7(D), and 7(E). Ex. 1, Third Seidel Decl. ¶6 (citing 5 U.S.C. §§ 552 (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E)).

***Issues Remaining in Dispute.*** The Parties stipulated that "Plaintiff does **not** contest the adequacy of the Defendants' search for records," and thus, "adequacy of the Defendants' search is

not at issue and need not be briefed by the parties or determined by the Court to dispose of this case." Dkt. 76. at 2 (emphasis added).

Thus, all that remains for the Court to adjudicate is the propriety of the Defendants' application of FOIA exemptions on a subset of documents. That subset was defined by the Parties and memorialized in a stipulation. Dkt. 76-1. Specifically, from among the 33,129 pages produced by Defendants, Plaintiff challenges three-hundred and thirty-nine (339) documents, totaling 1,336 pages to be addressed at the summary judgment stage. Dkt. 76-1, Appendix A attached to Dkt. 76. Of the 1,336 pages cited in in Appendix A, and in coordination with other government agencies, the FBI released 739 of the pages in full, withheld portions of 411 pages in part, and withheld 186 pages in full pursuant to one or more applicable exemptions or because the pages are sealed pursuant to a United States District Court order and unavailable for release though the FOIA. Given that Defendants released 739 of the challenged *in full*, the redactions on only 597 pages (**1.8% of the total production**) remain at issue.

This Motion and the attached declarations and index, in accordance with *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973), provide the Defendants' justification for withholding information pursuant to FOIA Exemptions 3, 5, 6, 7(C), 7(D), and 7(E). *See* 5 U.S.C. §§ 552 (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).

## LEGAL STANDARD

In general, summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "In the FOIA context, however, the traditional standard is modified because 'the threshold question in any FOIA suit is whether the requester can even see the documents the character of which determines whether they can be released.'" *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010). FOIA requires

federal agencies to disclose documents within their control upon request unless the documents fall within one of the nine enumerated exemptions. *See* 5 U.S.C. § 552(b)(1)–(9). The government bears the burden to prove that documents fall within an exemption. *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 141 n.3 (1989); *Batton*, 598 F.3d at 175; *see also* 5 U.S.C. § 552(a)(4)(B) ("[T]he burden is on the agency to sustain its action.").

"Typically it does so by [1] affidavit," *Am. Civ. Liberties Union v. U.S. Dep't of Defense,* 628 F.3d 612, 619 (D.C. Cir. 2011), and by [2] submitting "*Vaughn* indices describing the withheld documents and explaining why the withheld information fell under the claimed exemptions." *Larson v. Dep't of State,* 565 F.3d 857, 862 (D.C. Cir. 2009). A *Vaughn* index is a table, common in FOIA cases, describing the withheld documents and explaining why the withheld information fell under the claimed exemptions. *Batton*, 598 F.3d at 174. An agency's affidavits "are generally accorded the 'presumption of legitimacy' unless there is evidence that the agency handled the FOIA request in bad faith." *Id.* at 179.

Although the statute is designed to promote disclosure, "FOIA expressly recognizes that important interests are served by its exemptions, and those exemptions are as much a part of FOIA's purposes and policies as the statute's disclosure requirement." *Jobe v. Nat'l Transp. Safety Bd.*, 1 F.4th 396, 402 (5th Cir. 2021) (citing *Food Marketing Inst. v. Argus Leader Media*, ⸻ U.S. ⸻, 139 S. Ct. 2356, 2366, 204 L.Ed.2d 742 (2019) (cleaned up)); *see also FBI v. Abramson*, 456 U.S. 615, 630–31 (1982) ("While Congress established that the basic policy of [FOIA] is in favor of disclosure, it recognized the important interests served by the exemptions."). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible'" *Wolf v. C.I.A.*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (citations omitted).

**ARGUMENT**

Defendants satisfy the summary judgment burden with the attached declarations and *Vaughn* index justifying the challenged withholdings pursuant to FOIA Exemptions 3, 5, 6, 7(C), 7(D), and 7(E).  *See* 5 U.S.C. §§ 552 (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E). Specifically, Defendants' *Vaughn* index at **Ex. 1F** provides the disposition of each of the 1,336 challenged pages and Defendants' justification for withholding these pages in full or part.[1]  Each instance of information withheld pursuant to a FOIA exemption is accompanied by a justification code designation that corresponds to a category of exempted information.  These codes are further explained in the attached declaration. Ex. 1, Third Seidel Decl. ¶¶8-10.  Because the attached declarations and index present legitimate and logical justification for the challenged redactions, Defendants are entitled to summary judgment.

**I.    Exemption 3: Information Protected by Statute**

Defendants properly redacted information under FOIA Exemption 3, which exempts from disclosure information "specifically exempted from disclosure by statute . . . if that statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; <u>or</u> (A)(ii) establishes particular criteria from withholding <u>or</u> refers to particular types of matters to be withheld." 5 U.S.C. § 552 (b)(3).[2]

**a.    (b)(3)-1: Protection of Intelligence Sources and Methods, 50 U.S.C. § 3024(i)(1)**

In Exemption category (b)(3)-1, the FBI withheld information pursuant to Section 102A(i)(1) of the National Security Act of 1947, as amended by the Intelligence Reform and

---

[1] If requested, Defendants can provide copies of the contested pages to the Court for *in camera* inspection.

[2] The OPEN FOIA Act of 2009 established an additional requirement that any statute "enacted after the date of enactment of the OPEN FOIA Act of 2009, [must] specifically cite[] to this paragraph" in order to qualify under Exemption 3.

Terrorism Prevention Act of 2004. This statute provides that the Director of National Intelligence (DNI) "shall protect, and shall establish and enforce policies to protect, intelligence sources and methods from unauthorized disclosure."[3] On its face, this statute leaves no discretion to agencies about withholding from the public information about intelligence sources and methods. Thus, the protection afforded to intelligence sources and methods by 50 U.S.C. § 3024(i)(1) is absolute. *See CIA v. Sims*, 471 U.S. 159 (1985).

The DNI is authorized to establish and implement guidelines for the Intelligence Community (IC) for the classification of information under applicable laws, Executive Orders, and other Presidential Directives, and for access to and dissemination of intelligence. 50 U.S.C. § 3024(i)(1). To that end, the DNI promulgated Intelligence Community Directive 700, which provides that IC elements shall protect "national intelligence and intelligence sources and methods and activities from unauthorized disclosure."[4] The FBI is one of 18-member agencies comprising the IC, and as such, must protect intelligence sources and methods. Ex. 1, Third Seidel Decl. ¶13.

Given the plain Congressional mandate to protect the IC's sources and methods of gathering intelligence, the FBI determined that intelligence sources and methods would be revealed if any of the withheld information is disclosed to Plaintiff. Ex. 1, Third Seidel Decl. ¶14. Therefore, the FBI is prohibited from disclosing such information under 50 U.S.C. § 3024 (i)(1).[5] Defendant's declaration and index suffice to establish that intelligence sources and methods would

---

[3] Section 102A(i)(1) of the National Security Act was previously codified at 50 U.S.C. § 403(i)(1). As a result of the reorganization of Title 50 of the U.S. Code, Section 102A(i)(1) is now codified at 50 U.S.C. § 3024(i)(1). As relevant to U.S.C. § 552(b)(3)(B), the National Security Act of 1947 was enacted before the date of enactment of the OPEN FOIA Act of 2009.

[4] Intelligence Community Directive 700, dated June 7 2012, at ¶ E.2.a.

[5] Although 50 U.S.C. § 3024 (i)(1) does not impose a requirement to articulate harm, disclosure of this information presents a bona fide opportunity for individuals to develop and implement countermeasures, resulting in the loss of significant intelligence information, sources, and methods relied upon by national policymakers and the IC to safeguard national security.

be revealed with disclosure. *See Am. Ass'n of Women, Inc. v. U.S. Dep't of Justice*, 167 F. Supp. 3d 136, 143 (D.D.C. 2016) (approving withholding, under Exemption 3, of "information relating to intelligence sources and methods" without further describing the records); *Webster v. U.S. Dep't of Just.*, No. CV 02-603 (RC), 2020 WL 1536303, at *5 (D.D.C. Mar. 31, 2020) (finding the government's declaration stating that "'the FBI's intelligence sources and methods would be revealed if any of the withheld information is disclosed to Plaintiffs' . . . adequately assert[ed] that the information withheld qualifies under Exemption 3"). Here, as in *American Association of Women* and *Webster*, Defendants satisfy their summary judgment burden to establish they properly invoked Exemption 3 as to intelligence sources and methods.

Moreover, the FBI is asserting Exemption 3 in this case, at times in conjunction with Exemption 7(E), to protect information that would reveal intelligence sources and methods. Ex. 1, Third Seidel Decl. ¶15.

**b.  (b)(3)-2: Grand Jury Information – Federal Rule of Criminal Procedure 6(E)**

In Exemption category (b)(3)-2, the FBI withheld Federal Grand Jury information pursuant to Federal Rule of Criminal Procedure 6(e). Ex. 1, Third Seidel Decl. ¶16. It is well established Rule 6(e) embodies a broad, sweeping policy of preserving the secrecy of grand jury material regardless of the substance in which the material is contained. Records responsive to Plaintiff's requests reveal information about one or more federal grand juries empaneled in relation to the investigation at issue and were clearly marked on the face of the documents as relating to a federal grand jury.

The records at issue included documents containing detailed information concerning the federal grand jury subpoenas and returns, including summaries and/or analysis of the information subpoenaed or returned pursuant to federal grand jury subpoena. Ex. 1, Third Seidel Decl. ¶17.

This information reveals the identities of witnesses and producing parties and the sources of information relied on to develop the facts of the grand jury investigation. *Id.*

The FBI determined that any disclosure of this information would clearly violate the secrecy of the grand jury proceedings and could reveal the inner workings of a federal grand jury which the FBI is precluded from disclosing. *See Blackwell v. F.B.I.*, 680 F. Supp. 2d 79, 93 (D.D.C. 2010), aff'd, 646 F.3d 37 (D.C. Cir. 2011) (granting summary judgment where exemption (b)(3) exempted from disclosure: (1) information that would identify grand jury witnesses; (2) information that would identify certain records subpoenaed by the grand jury; and (3) the dates that the grand jury convened); *Biear v. United States Dep't of Just.*, No. 3:14-CV-01488, 2020 WL 13830930, at *6 (M.D. Pa. Mar. 9, 2020), report and recommendation adopted as modified, No. 3:14-CV-1488, 2023 WL 4868443 (M.D. Pa. July 31, 2023), aff'd sub nom. *Biear v. Att'y Gen. United States*, No. 23-2557, 2024 WL 837039 (3d Cir. Feb. 28, 2024) (granting summary judgment where exemption (b)(3) exempted from disclosure: names of recipients of federal grand jury subpoenas; information that identifies specific records subpoenaed by a federal grand jury; and copies of specific records provided to a federal grand jury in response to federal grand jury subpoenas). Here, as in *Blackwell* and *Biear,* the FBI properly withheld this information pursuant to Exemption (b)(3), in conjunction with Rule 6(e).

## II.    Exemption 5: Privileged Information

Exemption 5 of FOIA exempts from mandatory disclosure "inter-agency" or "intra-agency" memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5); *see also* Ex. 1, Third Seidel Decl. ¶¶18-21.

### a.   (b)(5)-1: Attorney Client Privilege

In Exemption category (b)(5)-1, Defendants protected privileged attorney-client communications.  Ex. 1, Third Seidel Decl. ¶¶22-24.  In the FOIA context, the attorney-client privilege protects confidential communications made between agency employees and agency lawyers "for the purpose of securing legal advice or services." *Kolbusz v. Fed. Bureau of Investigation*, No. CV 17-319 (EGS/GMH), 2023 WL 2072481, at *7 (D.D.C. Feb. 17, 2023) (FBI properly applied (b)(5) to withhold attorney-client information) (citing *Tax Analysts v. I.R.S.*, 117 F.3d 607, 618 (D.C. Cir. 1997) (citing *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984)); *Jud. Watch, Inc. v. U.S. Dep't of Treasury*, 802 F. Supp. 2d 185, 200 (D.D.C. 2011).

### b.   (b)(5)-3: Deliberative Process Privilege

In Exemption category (b)(5)-3, Defendants protected privileged, deliberative materials. Ex. 1, Third Seidel Decl. ¶¶25-27.  The deliberative process privilege protects the internal deliberations of the government by insulating recommendations, analyses, opinions, and other non-factual information comprising the decision-making process. In turn, Exemption 5 allows for the withholding of such privileged material – *i.e.*, material that contains, or was prepared in connection with the formulation of, opinions, advice, evaluations, deliberations, policies, proposals, conclusions, or recommendations. The privilege also protects records and information that, if disclosed, would reveal the agency's collection of multitudinous facts, and the sorting, evaluation, and analysis of those facts to make recommendations or reach a final agency decision.

Here, Defendants withheld intra-agency communications (case notes, search slips, and internal FOIA processing documents) containing information that is pre-decisional because it pertains to deliberations on how best to respond to FOIA requests. These deliberations include FBI staff providing advice, asking questions within the agency, proposing actions, and/or deliberating

to determine a final decision and/or course of action when processing FOIA requests. The withheld information precedes the final agency decisions.[6]  Ex. 1, Third Seidel Decl. ¶26.  *See Nat'l Sec. Couns. v. Cent. Intel. Agency*, 206 F. Supp. 3d 241, 279 (D.D.C. 2016), aff'd, 969 F.3d 406 (D.C. Cir. 2020) (agency has met its summary judgment burden of demonstrating that the withheld information was "'intended to facilitate or assist development of the agency's final position' regarding its internal FOIA processing procedures").  Defendants satisfy their summary judgment burden of establishing that its intra-agency, pre-decisional communications regarding how to respond to the FOIA requests were properly withheld under Exemption category (b)(5)-3.

## III.    Exemptions 6 & 7(C): Clearly Unwarranted/Unwarranted Invasion of Personal Privacy[7]

Defendants' invocation of Exemptions 6 and 7(C) were also justified and are supported by the summary judgment evidence.  Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  All information that applies to a particular person falls within the scope of Exemption 6.  *Cook v. Nat'l Archives & Records Admin*., 758 F.3d 168, 175 (2d Cir. 2014) (citing *U. S. Dep't of State v. Washington Post Co*., 456 U.S. 595, 599-602 (1982)).  Exemption 7(C) similarly exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an

---

[6] Wherever possible, the FBI has segregated for release facts and information related to final agency decisions.

[7] Defendants easily satisfy the threshold requirement of invoking Exemption (b)(7) because the records or information at issue were compiled for law enforcement purposes.  *See* Ex. 1, Third Seidel Decl. ¶ 28; *see also Smith v. Sessions*, 247 F. Supp. 3d 19, 26 (D.D.C. 2017) (records compiled during or as a result of FBI's criminal investigation were compiled for law enforcement purposes within the meaning of 5 U.S.C. § 552(b)(7)); *Dutton v. U.S. Dep't of Just*., 302 F. Supp. 3d 109, 123 (D.D.C. 2018) (defendants satisfied summary judgment burden of establishing records were compiled for law enforcement purposes where declaration stated information withheld was compiled in the course of the FBI's investigation of subjects for possible violation of federal crimes).

unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).[8]   In asserting these exemptions, Defendants weighed each impacted individual's privacy interest against the public's interest in disclosure.  Ex. 1, Third Seidel Decl. ¶31; *see also  Dillon v. U.S. Dep't of Just*., 444 F. Supp. 3d 67, 94 (D.D.C. 2020) ("Both Exemption 6 and Exemption 7(C) require agencies and reviewing courts to 'balance the privacy interests that would be compromised by disclosure against the public interest in the release of the requested information.'").  Where, as here, the records at issue relate to law enforcement files, individual privacy interests are heightened because the very "mention of an individual's name . . . will engender comment and speculation and carries a stigmatizing connotation."  *Id.*

In this case, in each instance where information was withheld pursuant to Exemptions 6 and 7(C), Defendants determined that the individuals' privacy interests outweighed any public interest in disclosure.  Ex. 1, Third Seidel Decl. ¶31.  The FBI also complied with its policies for determining whether the privacy concerns were obviated by the death of the individual.  *Id.* ¶32.  Moreover, during the ongoing meet-and-confer process with Plaintiff in this case, the FBI considered records presented by Plaintiff to establish the life/death status of some individuals.  Based on that collaborative approach, the FBI was able to make additional disclosures due to confirmation of death based on the records provided by Plaintiff.  *Id.* ¶33.

---

[8] The practice of the FBI is to assert Exemption 6 in conjunction with Exemption 7(C). Although the balancing test for Exemption 6 uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption 7(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion. The privacy interests are balanced against the public's interest in disclosure under both exemptions.

### a.  (b)(6)-1 and (b)(7)(C)-1: Names and Other Identifying Information of Third Parties Merely Mentioned

In Exemption category (b)(6)-1 and (b)(7)(C)-1, Defendants withheld the names and identifying information of third parties who were merely mentioned in the investigative records responsive to Plaintiff's requests. Ex. 1, Third Seidel Decl. ¶34. These individuals were not of investigative interest to the FBI, but they were tangentially mentioned in conjunction with FBI investigative efforts. *Id.* Defendants properly redacted the names and identifying information of these third parties. *See Dillon*, 444 F. Supp. 3d at 96 (FBI properly redacted identifying information of third parties merely mentioned who are "not of investigative interest to the FBI;" rather, they were "private citizens" who "were at one time connected with an FBI investigation"); *Am. Ass'n of Women, Inc. v. U.S. Dep't of Just.*, 167 F. Supp. 3d 136, 143 (D.D.C. 2016) ("defendant has properly claimed both exemptions from disclosure as the responsive records included personal information of FBI Special Agents and support personnel, third-parties of 'investigative interest,' non-FBI federal government personnel, third-parties 'merely mentioned,' state and local law enforcement personnel, and third-parties who provided information to the FBI.").

### b.  (b)(6)-2 and (b)(7)(C)-2: Names and Other Identifying Information of FBI Special Agents and Professional Staff

Within Exemption category (b)(6)-2 and (b)(7)(C)-2, Defendants withheld the names and identifying information of FBI Special Agents (SAs) and professional staff. Ex. 1, Third Seidel Decl. ¶35. Defendants' declaration and index justify these redactions. *See Am. Ass'n of Women, Inc.,* 167 F. Supp. 3d at 143.

### c.  (b)(6)-3 and (b)(7)(C)-3: Names and Other Identifying Information of Third Parties of Investigative Interest

In Exemption category (b)(6)-3 and (b)(7)(C)-3, Defendants withheld the names and identifying information of third parties who were of investigative interest to the FBI. Being

identified as a subject of FBI investigative interest carries a strong negative connotation and a stigma. And lease of the identities of these individuals to the public could subject them to harassment or embarrassment, as well as undue public attention. Ex. 1, Third Seidel Decl. ¶38. Defendants' declaration and index justify these redactions. *See Am. Ass'n of Women, Inc.,* 167 F. Supp. 3d at 143.

### d. (b)(6)-4 and (b)(7)(C)-4: Names and Other Identifying Information of Third Parties who Provided Information

In Exemption Category (b)(6)-4 and (b)(7)(C)-4, the FBI withheld the names and identifying information of third-party individuals who were interviewed, or provided information by other means, to the FBI during its investigation of Judith Coplon. The identifying information of, and information provided by, these third-party individuals appears within the FBI's files because these individuals willingly divulged information relevant to FBI investigative efforts. These individuals were not of investigative interest to the FBI. Plaintiff has not provided a privacy waiver from the third-parties authorizing release of their information, nor has Plaintiff supplied proof of death; therefore, these individuals maintain substantial and legitimate privacy interests in not having their cooperation or connection to FBI law enforcement matters disclosed. Ex. 1, Third Seidel Decl. ¶39.  As above, Defendants' declaration and index justify these redactions. *See Am. Ass'n of Women, Inc.,* 167 F. Supp. 3d at 143.

### e. (b)(6)-5 and (b)(7)(C)-5: Names and Other Identifying Information of Non-FBI Federal Government Personnel

In Category (b)(6)-5 and (b)(7)(C)-5, the FBI withheld the names and identifying information of personnel from non-FBI, federal, government agencies who provided information to or otherwise assisted the FBI in its investigation of Judith Coplon. Ex. 1, Third Seidel Decl. ¶39. The rationale for protecting the identities of other government employees is the same as the

rationale for protecting the identities of FBI employees. *Id.* ¶¶35-37. Defendants' declaration and index justify these redactions. *See Am. Ass'n of Women, Inc.,* 167 F. Supp. 3d at 143.

## IV.    Exemption 7(D): Confidential Source Information

Defendants are also justified in their application of Exemption 7(D). Exemption 7(D) exempts records or information compiled for law enforcement purposes when disclosure:

> could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). "Under 7(D), the government has clear statutory authority to withhold both the source and the information with respect to criminal investigations . . . ." *Cooper Cameron Corp. v. U.S. Dep't of Lab.*, 280 F.3d 539, 550 (5th Cir. 2002). What constitutes a "confidential" source has been interpreted broadly. The requirement signifies only that the information was provided in confidence or in trust, with the assurance that it would not be disclosed to others. *See Dow Jones & Co. v. Dep't of Just.*, 917 F.2d 571, 575–76 (D.C. Cir. 1990).

Numerous confidential sources report to the FBI on a regular basis; they provide information under express assurances of confidentiality and are "informants" within the common meaning of the term. Ex. 1, Third Seidel Decl. ¶44. Others are interviewed and/or provide information under implied assurances of confidentiality (*i.e.*, under circumstances from which assurances of confidentiality may be inferred). In either situation, these sources are considered to be confidential because they furnish information only with the understanding that their identities and the information they provided will not be divulged outside the FBI. *Id.* Information provided by these sources is singular in nature, and if released, could reveal their identities.

The release of a source's identity would forever eliminate that source as a future means of

obtaining information. *Id.* ¶44. In addition, when the identity of one source is revealed, that revelation has a chilling effect on the activities and cooperation of other sources. *Id.* Such a result undermines one of the FBI's most important means of collecting information and could thereby severely hamper law enforcement efforts to detect and apprehend individuals engaged in the violation of federal criminal laws. *Id.*

Here, Defendants applied Exemption 7(D) redactions in six sub-categories of information. *See* Ex. 1, Third Seidel Decl. ¶10 (chart showing six sub-categories under Confidential Source Information exemption). Importantly, Plaintiff has already challenged a sample set of Defendants' Exemption 7(D) redactions in Plaintiff's "Opposed Motion Pursuant to Scheduling Order Paragraph 5(b) to Resolve Issues as to Defendants' Improper Invocation of FOIA Exemptions in its Production of Documents." Dkt. 63; Dkt. 63-34. And this Court denied Plaintiff's Motion, writing that Defendants reasonably demonstrated how (1) permanent source symbol numbers given to FBI confidential human sources and (2) information provided to the FBI by a foreign government agency under an express assurance of confidentiality falls within Exemption 7(D). Dkt. 71 at 8-14. Thus, the Court has already ruled on two out of the six challenged sub-categories.[9] In any event, Defendants present sufficient summary judgment evidence to justify their redactions under all six sub-categories.

---

[9] The exemptions challenged, reviewed, and ruled on by the Court in the prior round of briefing are akin to a FOIA sample. Under FOIA sampling principles, "[u]pon examining [a] sample, a court is then able to extrapolate its conclusions from the representative sample to the larger group of withheld materials." *Blackwell v. F.B.I.,* 680 F. Supp. 2d 79, 89 (D.D.C. 2010), aff'd, 646 F.3d 37 (D.C. Cir. 2011). Thus, the Court's reasoning and decision as to the previously briefed withholdings should apply to the Plaintiff's renewed challenge to Defendants' application of the same exemption.

### a.  (b)(7)(D)-1: Confidential Source Symbol Numbers

In the prior round of briefing, Defendants provided the FBI's justification for withholding confidential source symbol numbers in Exemption category (b)(7)(D)-1. Dkt. 66.  This Court held that the FBI properly withheld information pursuant to Exemption 7(D).  Dkt. 71.  Nevertheless, Plaintiff re-urges her objection to these redactions on this second round of briefing on the propriety of redactions. The same justification and analysis apply to the information withheld in Exemption category (b)(7)(D)-1 in the records at issue here. *See* Dkt. 66-2, Second Seidel Decl. ¶¶ 22-23; *see also* Ex. 1, Third Seidel Decl. ¶46.  Specifically, in this case, the FBI did not refer to the confidential sources by their true names. Dkt. 66-2, Second Seidel Decl. ¶¶ 22-23.  Instead, these sources were referred to only by their individually assigned permanent source symbol numbers. *Id.*  If the FBI disclosed the confidential source symbol numbers of these informants, their identities could be ascertained by persons knowledgeable of the FBI's investigations and the events and subjects involved because these singular numbers are assigned to specific individuals. *Id.* ¶23.

As previously argued, Courts routinely protect confidential source symbol numbers for these reasons. *Pickering v. U.S. Dep't of Just.*, No. 19-CV-001F, 2021 WL 5810396, at *16 (W.D.N.Y. Dec. 7, 2021); *Webster v. U.S. Dep't of Just.*, No. CV 02-603 (RC), 2020 WL 1536303, at *7 (D.D.C. Mar. 31, 2020); *Canning v. U.S. Dep't of Just.*, No. CV 11-1295(GK), 2017 WL 2438765, at *10 (D.D.C. June 5, 2017).  Here, as in *Pickering, Webster,* and *Canning,* Defendants properly redacted confidential source symbol numbers under Exemption 7(D).

### b.  (b)(7)(D)-2: Names and Other Identifying Information of Individuals who Provided Information Under an Express Assurance of Confidentiality and Information Provided

Within Exemption category (b)(7)(D)-2, Defendants protected the names, identifying information of, and information provided by third parties to the FBI under express grants of

confidentiality. Ex. 1, Third Seidel Decl. ¶¶47-50.  When processing the records at issue, the FBI found evidence these individuals either requested their identities not be revealed; and/or FBI investigators would have, by standard practice, expressly promised these third parties their identities and the information they provided would remain confidential.  *Id.*

The FBI was able to determine its investigators granted certain individuals within the records at issue express assurances of confidentiality because it located ***positive indicators*** they were official, established FBI informants.  *Id.* ¶49.  For example, in some instances, sources were described as being "CHSs" or a "Cooperating Witnesses" (CWs).  *Id.* These designations of CW or CHS are positive indications these individuals entered into official, confidential relationships with the FBI in which they would have, by standard FBI practice, been provided with express assurances of confidentiality. In other instances, the FBI located sources given source file numbers and/or source symbol numbers. *Id.*

Release of such information would endanger these Confidential Human Sources (CHSs) and cause great detriment to the FBI's ability to recruit and maintain reliable CHSs; thus, the FBI protected this information pursuant to Exemption 7(D).  *Id.* ¶50.

Defendants' application of this subcategory of Exemption 7(D) is supported by the summary judgment evidence.  *See Callimachi v. Fed. Bureau of Investigation*, 583 F. Supp. 3d 70, 88 (D.D.C. 2022) (FBI's declaration about three "positive indicators" in the withheld information ensure that the agency promised confidentiality to the sources who provided that information and foreseeable harm from disclosure of these materials were sufficient to establish propriety of Exemption 7(D) redactions).  Here, as in *Callimachi,* Defendants are entitled to summary judgment on this exemption.

### c.   (b)(7)(D)-3: Identity of a Foreign Law Enforcement Agency that Provided Information Under an Express Assurance of Confidentiality and Information Provided

As with the confidential source symbol numbers above, in the prior round of briefing, Defendants provided the FBI's justification for withholding information provided to the FBI by a foreign government agency under an express assurance of confidentiality in Exemption category (b)(7)(D)-3.  This Court held that the FBI properly withheld information pursuant to Exemption 7(D).  Dkt. 71.  Nevertheless, Plaintiff re-urges her objection to these redactions on this second round of briefing on the propriety of redactions. The same justification and analysis apply to the information withheld in Exemption category (b)(7)(D)-3 in the records at issue here. *See* Dkt. 66-2, Second Seidel Decl. ¶24; *see also* Ex. 1, Third Seidel Decl. ¶51.  *See Property of the People, Inc. v. Dep't of Justice*, 539 F. Supp. 3d 16, 27 (D.D.C. 2021) (approving reliance on Exemption 7(D) where foreign government provided information during cooperative investigation under an express assurance of confidentiality);  *see also Pickering*, 2021 WL 5810396, at *16.

### d.   (b)(7)(D)-4: Names and Other Identifying Information of Individuals who Provided Information Under an Implied Assurance of Confidentiality and Information Provided

In Exemption category (b)(7)(D)-4, Defendants protected the names, identifying information of, and information provided by individuals under circumstances in which confidentiality can be inferred.  Ex. 1, Third Seidel Decl. ¶¶52-55.  The Supreme Court has explained that "an implied assurance of confidentiality" may be reasonably inferred based on certain "generic circumstances." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 179 (1993).  In *Landano*, the Supreme Court analyzed the evidentiary showing required to establish that sources providing information to the FBI in the course of a criminal investigation were "confidential" sources within the meaning of Exemption 7(D). *Id*. at 167. It explained that the "nature of the informant's ongoing relationship

with" the FBI, the fact that the FBI "typically communicate[d] with informants only at locations and under conditions which assure[d] the contact w[ould] not be noticed," and the "character of the crime at issue" in that case "justif[ied] the inference." *Ibid.* (internal quotation marks omitted).

Here too, it was reasonable for Defendants to infer these third parties cooperated with the FBI only because they expected their identities and the information they provided would be held in confidence. *Id.* Specifically, these individuals had access to and/or knowledge about investigative targets and others involved in espionage, and that access exposed them to potentially significant harms should their association and cooperation with the FBI be publicly disclosed. *Id.* ¶ 53. Defendants properly applied redactions under Exemption category (b)(7)(D)-4.

### e. (b)(7)(D)-6: Information from a State or Local Law Enforcement Agency Provided Under an Implied Assurance of Confidentiality

Within Exemption category (b)(7)(D)-5, Defendants withheld information provided by a state or local law enforcement agency under an implied assurance of confidentiality. Ex. 1, Third Seidel Decl. ¶¶56-57. Specifically, certain state or local law enforcement agencies provided specific, detailed information of value to the FBI, which is singular in nature, concerning espionage activities. *Id.* Confidential sources can be individuals or institutional sources, such as other state or local law enforcement agencies. *See Williams v. FBI*, 69 F.3d 1155, 1160 (D.C. Cir. 1995) (post-*Landano* court upholding a 7(D) exemption for local law enforcement intelligence gathering, because due to the nature of the activity, "it is reasonable to infer that local law enforcement agencies shared information obtained from such sources with the expectation that the FBI would keep the information confidential.").

Here, Defendants inferred confidentiality because the information shared by the other agencies: (1) would disclose the agencies' non-public law enforcement techniques and details; (2) would discredit the agencies in the eyes of current sources and greatly hinder their ability to recruit

future sources; (3) pertains to non-public investigations pursued by the agencies; and/or (4) could expose the agencies' personnel, who were at the time in close proximity to violent criminals, to retribution by the criminals on whom they provided information.  Ex. 1, Third Seidel Decl. ¶56. As in *Williams,* it is reasonable to infer that local law enforcement agencies shared information with the expectation that the FBI would keep the information confidential.

### f.  (b)(7)(D)-7: Names, Identifying Data, and Information Provided by Employees of Commercial and Financial Institutions under Implied Assurances of Confidentiality

Within Exemption category (b)(7)(D)-7, Defendants withheld information to protect the names, identifying data, and information provided by employees of commercial and financial institutions under implied assurances of confidentiality.  Ex. 1, Third Seidel Decl. ¶¶58-61.  FBI inferred that the employees and institutions provided this information to the FBI only because they believed their cooperation with the FBI, and the information they provided (outside of its investigative use), would remain confidential.  *Id.*  Defendants therefore properly invoked Exemption 7(D) to protect the names, identifying data, and information provided by employees of commercial and financial institutions under implied assurances of confidentiality.  *See Fitzgibbon v. U.S. Secret Serv*., 747 F. Supp. 51, 59 (D.D.C. 1990).

### g.  (b)(7)(D)-8: Confidential Source File Numbers

As to the sixth sub-category within Exemption 7(D), Defendants protected the confidential source file numbers of permanent Confidential Human Sources (CHSs).  Ex. 1, Third Seidel Decl. ¶¶62-63.  Confidential source file numbers are administrative tools that facilitate the retrieval and storage of information supplied by CHSs.  *Id.*  Similar in use to confidential source symbol numbers, these confidential source file numbers are assigned in sequential order to CHSs who report information to the FBI on a regular basis under express assurances of confidentiality.  *Id.*

Confidential source files are unique to particular confidential informants. *Id.* These numbers are typically recorded in an investigative record, whenever information provided by a CHS is memorialized in the investigative record but is also copied into the informant's assigned confidential source file number. *Id.* The FBI correctly protected the confidential source file numbers of permanent CHSs. *See Schoenman v. FBI*, 763 F. Supp. 2d 173, 200 (D.D.C. 2011); *Skinner v. U.S. Dep't of Justice*, 744 F. Supp. 2d 185, 212 (D.D.C. 2010).

## V.    Exemption 7(E) Investigative Techniques and Procedures

FOIA Exemption (b)(7)(E) provides protection for:

> law enforcement records [which]…would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E). The FBI asserted Exemption (b)(7)(E) to withhold information from these records, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. Ex. 1, Third Seidel Decl. ¶¶64-66.

### a.    (b)(7)(E)-1: Specific Law Enforcement Techniques Used to Conduct National Security Investigations

In the prior round of briefing, Defendants provided the FBI's justification for withholding information under Exemption 7(E). Dkt. 66-2, Second Seidel Decl. ¶¶25-28; Dkt. 66 at 6-9. This Court held that the FBI properly withheld information pursuant to Exemption 7(E). Dkt. 71 at 6-8.[10] Nevertheless, Plaintiff now re-urges her objections to Defendants' application of the

---

[10] The exemptions challenged, reviewed, and ruled on by the Court in the prior round of briefing are akin to a FOIA sample. Under FOIA sampling principles, "[u]pon examining [a] sample, a court is then able to extrapolate its conclusions from the representative sample to the larger group of withheld materials." *Blackwell v. F.B.I.,* 680 F. Supp. 2d 79, 89 (D.D.C. 2010),

Exemption 7(E) in this round of summary judgment briefing. Dkt. 76-1.  The same justification and analysis applies to the information withheld in Exemption category (b)(7)(E)-1 in the records at issue here. Dkt. 66-2, Second Seidel Decl. ¶¶25-28; *see also Blackwell v. F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2011) (quoting *Mayer Brown LLP v. I.R.S.*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)); *see also Bradley v. Internal Revenue Serv.*, No. 5:17-CV-737-DAE, 2019 WL 4980459, at *7 (W.D. Tex. Aug. 5, 2019).

### b.  (b)(7)(E)-3: FBI Secure Fax Numbers and Telephone Numbers

In Exemption category (b)(7)(E)-3, the FBI withheld secure fax numbers and telephone numbers of FBI personnel. Releasing this information would provide criminals with specific targets for attacks on FBI communications through "spoofing" or other illegal schemes.[11] Ex. 1, Third Seidel Decl. ¶68.  Thus, Defendants properly redacted this information.  *See Light v. Dep't of Just.*, 968 F.Supp.2d 11, 29 (D.D.C.2013) (withholding "internal nonpublic telephone numbers and web site addresses used frequently by [FBI] personnel to exchange investigative information"); *Ortiz v. United States Dep't of Just.*, 67 F. Supp. 3d 109, 123 (D.D.C. 2014) (agency telephone numbers e assigned to DEA employees were properly withheld under Exemption 7(E) because their release to the public "could enable violators to identify law enforcement personnel, disrupt official DEA business, subject DEA employees to harassing phone calls).

---

aff'd, 646 F.3d 37 (D.C. Cir. 2011). Thus, the Court's reasoning and decision as to the previously briefed withholdings should apply to the Plaintiff's renewed challenge to Defendants' application of the same exemption.

[11] As recently as June 3, 2021, DOJ's Executive Office for Immigration Review (EOIR) announced it was notified of phone calls that spoofed the Office of the Chief Immigration Judge as part of a misinformation campaign. Callers spoofed the Office of the Chief Immigration Judge's main line so that calls would appear to be coming from EOIR on the recipient's caller ID. The caller then posed as an EOIR employee and sought personal information from the victims. See: https://www.justice.gov/eoir/pr/eoir-warns-scammers-spoofing-agency-phone-number, last accessed April 3, 2024.

### c.  (b)(7)(E)-4: Collection and Analysis of Information

In Exemption category (b)(7)(E)-4, Defendants withheld the methods the FBI uses to collect and analyze information it obtains for investigative purposes, including internal FOIA processing documents. Releasing internal FOIA processing documents may inadvertently disclose sensitive law enforcement techniques and procedures through the content contained within these documents.  Ex. 1, Third Seidel Decl. ¶69.  Release of this type of information would enable criminals to educate themselves about the techniques employed for the collection and analysis of information and therefore allow these individuals to take countermeasures to circumvent the effectiveness of these techniques and to continue to violate the law and engage in intelligence, terrorist, and criminal activities. *Id.*  Accordingly, the FBI has properly withheld this information pursuant to FOIA Exemption 7(E).

### d.  (b)(7)(E)-5: Database Identities

In Exemption category (b)(7)(E)-5, Defendants protected the identities of public databases used in non-public ways to gather investigative information and the identities of sensitive non-public databases used for official law enforcement purposes by the FBI.  Ex. 1, Third Seidel Decl. ¶70.  Releasing the identities of these databases would give criminals insight into the available tools and resources the FBI uses to conduct criminal and national security investigations (*i.e.*, the scope of information stored within the databases, how the FBI uses the databases to support its investigations, the types of information most valued by the FBI for particular investigations, and vulnerabilities of the databases). *Id.*  Defendants properly applied this sub-category of 7(E) redactions.  *See Callimachi v. Fed. Bureau of Investigation*, 583 F. Supp. 3d 70, 91 (D.D.C. 2022) ("[D]isclosure of the databases' identities tells criminals which database the Bureau relies on. Cyber criminals seeking to cripple the FBI's capabilities might then know to target those

databases."); *New York Times Co. v. U.S. Dep't of Just.*, No. 16 CIV. 6120 (RMB), 2017 WL 4712636, at *27 (S.D.N.Y. Sept. 29, 2017) (FBI properly applied Exemption 7(E) to database identities because "disclosure of database identities and search results would reveal how the FBI investigates suspected [criminals]").

### e. (b)(7)(E)-6: Investigative Focus of Specific Investigations

In Exemption category (b)(7)(E)-6, the FBI protected the investigative focuses of specific FBI counterintelligence and espionage investigations. Ex. 1, Third Seidel Decl. ¶¶73-75. These focuses have not been publicly disclosed. Revealing this information to investigative targets would alert them to the FBI's interest in their activities, allowing them to take active measures to conceal/destroy evidence or modify their behavior to avoid future investigative scrutiny. *Id.* The FBI properly invoked Exemption 7(E) to protect investigative focuses. *See Gatson v. Fed. Bureau of Investigation,* No. CV 15-5068, 2017 WL 3783696, at *14 (D.N.J. Aug. 31, 2017), aff'd, 779 F. App'x 112 (3d Cir. 2019) ("Disclosure of the broader investigative focuses and how they are connected to other investigations would show the scope of the FBI's strategies in combatting crime" and were properly withheld under Exemption 7(E)).

## VI.    Records Sealed By Court Order

The FBI also withheld responsive records pursuant to a court sealing order issued by the United States District Court, Southern District of New York, *National Lawyers Guild v. Attorney General*, 77 CIV-999. Ex. 1, Third Seidel Decl. ¶76. Accordingly, the FBI withheld responsive records it determined to be subject to the court's sealing order at Bates pages FBI(19-cv-419)-30047 through FBI(19-cv-419)-30061. The FBI "simply [has] no discretion . . . to exercise." *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980). As the D.C. Circuit has explained, "respect for the judicial process requires the agency to honor" a court order or

injunction barring disclosure of sealed materials. *Morgan v. U.S. Dep't of Just.*, 923 F.2d 195, 196 (D.C. Cir. 1991).

## VII.    Consultations with Other Government Agencies

The FBI consulted with numerous other government agencies in making disclosure determinations, as permitted and required by statute. Ex. 1, Third Seidel Decl. ¶77.  These types of referrals occur often and are contemplated by the FOIA statute.  *Id.; see* also 5 U.S.C. § 552(a)(6)(iii)(III) (permitting consultation "with another agency having a substantial interest in the determination of the request").  As further described in the attached declaration, Defendants consulted with the National Security Agency (NSA) and the Central Intelligence Agency (CIA). The NSA and CIA are not parties to the litigation but submit the attached declarations supporting their withholdings.  *See* Ex. 1G (NSA Declaration) and Ex. 1H (CIA Declaration).

Moreover, as part of these consultations, some of the other government agencies reviewed and withdrew their prior withholding determinations. Consequently, since the time of the Second Seidel Declaration, a supplemental release to Plaintiff was made on April 29, 2024, disclosing previously withheld information. 101 pages were re-released with supplemental disclosures made by the CIA, Department of Justice, Office of the Solicitor General, Internal Revenue Service, NSA, OIP, and the U.S. Citizenship and Immigration Services.  Ex. 1, Third Seidel Decl. ¶77.

## VIII.   Segregability

Finally, Defendants have satisfied their segregability obligations under FOIA.  For purposes of segregability, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). Here, Defendants processed all records responsive to Plaintiff's requests to achieve maximum disclosure consistent with the access provisions of the FOIA.  Ex.

1, Third Seidel Decl. ¶7.   Every effort was made to provide Plaintiff with all information in the public domain and with all reasonably segregable, non-exempt information.  *Id.*  The FBI did not withhold any reasonably segregable, nonexempt portions from Plaintiff.  *Id.*

## CONCLUSION

Defendants have presented declarations, *Vaughn* indices, and legal authority sufficient to logically and plausibly support their invocation of the challenged exemptions and satisfy their FOIA and summary judgment burdens.  For the reasons stated above and attached, Defendants respectfully request that the Court grant summary judgment in their favor.


Dated: May 15, 2024                              Respectfully submitted,

                                                 **Jaime Esparza**
                                                 United States Attorney

                              By:    */s/ Liane Noble*
                                     **Liane Noble**
                                     Assistant United States Attorney
                                     State Bar No. 24079059
                                     U.S. Attorney's Office
                                     903 San Jacinto Blvd., Suite 334
                                     Austin, Texas 78701
                                     (512) 370-1252 (phone)
                                     (512) 916-5854 (fax)
                                     Liane.noble@usdoj.gov

                                     ***Attorneys for Defendants***